**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT LAUDERDALE DIVISION**

**Case No. 0:26-cv-60370-DMM**

**JERMAINE MCINTOSH**,

Plaintiff,

v.

**EXPERIAN INFORMATION SOLUTIONS INC**,
**EQUIFAX INFORMATION SERVICES LLC,**
**TRANS UNION LLC,**
**MIDLAND CREDIT MANAGEMENT INC,**
**CAPITAL ONE FINANCIAL CORPORATION**
**D/B/A CAPITAL ONE,**
**COMENITY CAPITAL BANK,**
**BANK OF AMERICA NA,**
and **EXETER FINANCE LLC**,

Defendants.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT EXETER FINANCE LLC'S**
**MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE AS TO EXETER**

Plaintiff Jermaine McIntosh ("Plaintiff"), by and through the undersigned counsel, hereby files this Response in Opposition to Defendant, Exeter Finance LLC's ("Exeter") Motion to Compel Arbitration and to Dismiss Case as to Exeter [D.E. 27] (the "Motion"), and in support states as follows:

## INTRODUCTION

On March 13, 2018, Plaintiff purchased a vehicle from Coral Springs Honda and executed a Retail Installment Sale Contract (the "Contract"). *See* D.E. 27, Exhibit A-1. The Contract included an arbitration provision between Plaintiff and Coral Springs Honda, its employees, agents, successors or assigns (the "Arbitration Provision"). D.E. 27, Exhibit A-1 at Page 5. Coral Springs Honda subsequently assigned the Contract to Exeter. *Id.*, Exhibit A. at ¶ 4. On March 23,

2023, Exeter sold Plaintiff's account and assigned it to NCB Management Services, Inc. ("NCB"). *See* Exhibit A. Exeter executed a Bill of Sale and Assignment of Accounts (the "Bill of Sale and Assignment") to NCB which states in relevant part:

> "Exeter Finance LLC ("Seller") or "Assignor"), hereby absolutely sells, transfers, assigns, sets over, and conveys to NCB Management Services, Inc. ("Buyer" or ("Assignee"), without recourse and without representations or warranties except those as outlined in the Agreement (as defined below), express or implied, of any type, kind, or nature:
>
> (a) All of Assignor's right, title, and interest in and to each of the Accounts sold on March 23, 2023 . . . ."
>
> Exhibit A at Page 42.

The subject matter arises out of a dispute concerning false, incomplete, and inaccurate information on Plaintiff's credit reports. As stated in Plaintiff's Complaint, various Defendants, including Exeter, began reporting false and inaccurate information regarding accounts associated with Plaintiff to the credit reporting agencies. D.E. 1, ¶ 14. The information is erroneous, incomplete and inaccurate because, among other issues, the amounts and payments are incorrect. *Id*. at ¶ 15. Plaintiff alleges that he sent written disputes to Equifax and Experian, who transmitted the disputes to Exeter, however Exeter failed to conduct any reasonable investigation into Plaintiff's disputes. *Id*. at ¶ 21. Plaintiff alleges that Exeter violated the Fair Credit Reporting Act ("FCRA") by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information provided by the consumer reporting agencies, and failing to delete the inaccurate information. *Id*. at ¶ 278-280.

Despite selling and assigning the account to NCB, Exeter now seeks to compel arbitration by arguing that its prior assignment of the Contract allows it to compel arbitration of Plaintiff's claims. Exeter's argument fails as a matter of law. A review of the facts and relevant case law reveals that, once Exeter executed the Bill of Sale and Assignment, it ceased to be a party to the

contract. Therefore, Exeter cannot compel arbitration and the Court must deny Exeter's Motion to Compel Arbitration.

**Applicable Standard**

"Arbitration is a matter of contract, and there is a liberal federal policy favoring arbitration agreements." *See Grant Rotolante*, 147 So.3d 128 (Fla. 5th DCA 2014). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id*. "However, while arbitration is favored, no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Id*. In determining whether to enforce arbitration agreements, courts have required three elements: (1) "a valid written agreement to arbitrate" exists between the parties; (2) the dispute in question falls within the scope of that arbitration agreement; and (3) the "right to arbitrate has not been waived." *See Prescott Architects, Inc. v. Lexington Insur. Co*., 638 F. Supp. 2d 1317 (N.D. Fla. 2009).

Courts have interpreted the Federal Arbitration Act (the "FAA") to favor enforcing written arbitration agreements after it is proven that a written arbitration agreement exists between the parties. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). However, the policy favoring arbitrating claims under the FAA does not arise until after the moving party proves that a written arbitration agreement exists between the parties. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (finding that the general policy favoring arbitrating claims does not "apply to the issue of which claims are arbitrable").

The United States Supreme Court has rejected the proposition that the policy favoring arbitration under the FAA should be considered in determining whether the parties to a contract agreed to arbitrate the dispute at issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2850 (2010) (stating that courts must decide motions to compel arbitration by "applying the

presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand").

Additionally, the Court's interpretation of the contract at issue must be governed by Florida law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (finding that the existence of an arbitration agreement between parties is determined by state contract law); *see also MSP Recovery Claims v. QBE Holdings, Inc*., 965 F.3d 1210, 1217 (11th Cir. 2020) *(*citing to *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009) ("The interpretation of private contracts is ordinarily a question of state law.")

**ANALYSIS**

**A. A Valid, Enforceable Arbitration Agreement Does Not Exist Between Plaintiff and Exeter**

Generally speaking, under Florida law, "a non-signatory to a contract containing an arbitration clause cannot compel a signatory to submit to arbitration."Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., 158 So. 3d 644, 646 (Fla. 3d DCA 2014).

An assignment has been defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another." *Cont'l Cas. Co. v. Ryan Inc. E*., 974 So. 2d 368, 376 (Fla. 2008). An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor *See Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1101 (11th Cir. 2020) (citing to *Cf. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A*., 731 F.2d 112, 125 (2d Cir. 1984). An assignment is a transfer of all the interests and rights to the thing assigned. *Price v. RLI Insurance Company*, 914 So. 2d 1010, 1013 (Fla. 5th DCA 2005) (citing to *Rose v. Teitler*, 736 So. 2d 122 (Fla. 4th DCA 1999. The assignee thereafter stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name. *Id*. Because an assignment vests in the assignee the right to enforce the

contract, an assignor retains no rights to enforce the contract after it has been assigned. *Id*. at 1013-14.

In *Price*, the plaintiffs purchased car from a motor vehicle dealer, First Choice, who financed the purchased and entered into an install sales contract with the plaintiffs. *Id*. at 1011. The contract provided that it could be assigned and the dealership assigned the contract to a company, Florida Finance. *Id*. The court held that, once the install sales contract was assigned from First Choice to Florida Finance, First Choice had no right to enforce the contract as that interest and right belonged to Florida Finance. *Id*. at 1014. To hold otherwise would negate the reason and legal effect of the assignment. *Id*.

Similarly, in *Kennamer v. Ford Motor Credit Co. LLC*, the plaintiffs purchased an automobile from a dealership and entered into a retail-install contract with the dealership as part of the purchase. *Kennamer v. Ford Motor Credit Co. LLC*, 153 So. 3d 752, 755. The dealership subsequently assigned the contract to Ford Credit. *Id*. The Court found that the dealership could not enforce the arbitration clause under the installment contract because it assigned its right and liabilities to Ford Credit. *Id*. at 763.

Just as the courts in *Price* and *Kennamer* determined that there was no enforceable contract, Exeter can no longer enforce the arbitration provision as it sold, transferred, assigned, set over and conveyed the account to NCB. Accordingly, the interest and right to enforce the arbitration provision belongs only to NCB. To hold otherwise would negate the interest and right belonged to NCB.

Exeter argues that it is entitled to enforce the arbitration agreement because there is a survival clause which states that the arbitration provision survives any termination, payoff or transfer of the Contract. In support, Exeter cites to numerous cases where courts have enforced

arbitration after the termination or cancellation of the contract. Exeter argues that those cases allow Exeter to enforce the arbitration provision as it survives termination, payoff or transfer of the Contract. Plaintiff does not deny that the Arbitration Provision has a survival clause, which simply allows the Arbitration Provision to survive when the Contract is terminated, paid off, or transferred to a different party. The case law cited by Exeter is wholly inapplicable to the facts of this case as the Contract has never been terminated or cancelled. Rather, Exeter absolutely sold, transferred, assigned, set over, and conveyed to NCB all of its right, title, and interest in Plaintiff's account. As to the survival clause allowing the Arbitration Provision to survive when transferred to a different party, that is a benefit reserved for NCB.

Under Exeter's argument, any assignee of the Contract would be able to enforce arbitration against Plaintiff. This is not the case. This exact issue was addressed in *Novic v. Midland Funding, LLC*, where the plaintiff opened an account with Credit One, which was later sold three times and ultimately purchased by Midland Funding. *Credit Novic v. Midland Funding, LLC*, 271 F. Supp. 3d 778, 780 (D. Md. 2017). The plaintiff filed a lawsuit under the FCRA against credit reporting agencies and Credit One and Midland Funding regarding the plaintiff's account. *Id*. at 781. Credit One filed a Motion to Compel Arbitration pursuant to its prior agreement with the plaintiff. *Id*. at 782. The plaintiff did not contest that the agreement between plaintiff and Credit One once contained a valid agreement to arbitrate, but argued that Credit One ceased to be a party to the arbitration agreement when it assigned all of its right, title and interest to the account. *Id*. at 782-783.

The court noted that the arbitration provision included plaintiff, Credit One, its successors or assigns, as well as a severability and survival provision, the latter of which stated that the arbitration provision survived any transfer or assignment of the account. *Id*. at 784. Credit One

argued that this provision allowed it to maintain its right to arbitrate. *Id*. The court held that, although Credit One initially held the right to arbitrate, when Credit One transferred its rights and interests in the agreement, it transferred that right to the assignee. *Id*. The court noted that, for it to hold otherwise, this would mean that each assignee to the account, despite having transferred all its rights to a subsequent assignee, still maintained the right to compel the plaintiff to arbitrate. *Id*. at 785. Therefore, the court denied Credit One's Motion to Compel Arbitration, finding that once Credit One assigned all right, title and interest to the account, it ceased to be a party to the contract. *Id*.

With respect to the present matter, the Arbitration Provision states that it is between you (Plaintiff) or our (Coral Springs Honda) employees, agents, successors or assigns. The Arbitration Provision also states that it shall survive any termination, payoff or transfer of the contract. However, as the court found in *Novic*, despite the inclusion of this language in the contract, Exeter transferred its rights and interests in the Contract, including the right to arbitrate, to the assignee, NCB. To hold otherwise would mean that each assignee of Plaintiff's account, despite having transferred its rights to a subsequent assignee, maintained the right to compel the plaintiff to arbitrate.

Ultimately, Exeter absolutely sold, transferred, assigned, set over, and conveyed to NCB all of Exeter's right, title, and interest in the Plaintiff's account. Once Exeter executed the Bill of Sale and Assignment, it ceased to be a party to the contract. Accordingly, the Court must deny Exeter's Motion to Compel Arbitration.

**B. <u>Plaintiff's Claims are not Within the Scope of the Arbitration Agreement</u>**

As argued above, it is Plaintiff's position that there is no valid, enforceable arbitration agreement between Plaintiff and Exeter. However, should the Court determine that such an

agreement exists, the consumer protection claims at issue do not fall within the scope of the Arbitration Provision.

Arbitration clauses can be "broadly" worded, or "narrowly" drawn. *See e.g., Seth v. Rajagopalan*, 2013 U.S. Dist. LEXIS 199810 (S.D. Fla. Jan. 25, 2013). "An arbitration clause is considered 'broad' rather than 'narrow' if it evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Id.* at *8.

Generally, a clause which provides for resolution of disputes "arising out of" a particular contract or undertaking are deemed "narrow" in scope. *See Seifert v. U.S. Homes Corp.*, 750 So. 2d 633, 637 (Fla. 1999). If the clause is narrow, then the <u>scope</u> of the agreement "refers solely to disputes or controversies 'under' or 'arising out of' the contract [and] arbitration is restricted to claims relating to the interpretation of the contract and matters of performance." *Id*. On the other hands, clauses indicating that any dispute "arising out of or *related* to" the contract have been deemed "broad." *Seifert*, 750 So. 2d at 637-38. (emphasis added). If a clause is deemed to be "broad" then, "the test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause." *See Seifert*, 750 So. 2d at 638.

"[In] order for a dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration [under a broad clause], it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." *Seifert*, 750 So. 2d at 639. This test is not satisfied merely "because the dispute would not have arisen absent the existence of a contract between the parties." *Id. See also Pro-Play Games, LLC v. Roger*, 390 So. 3d 146 (Fla. 3d DCA 2024) (finding that a broad arbitration provision must pass the "significant relationship" test, which requires "a contractual nexus

between the claim and the contract" meaning "the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract.").

Ultimately, if the provision is deemed "narrow" by this Court, the consumer protection issues at issue in the Complaint are not within the scope of arbitration because they do not involve the interpretation or enforcement of any agreement in which the clause(s) are contained. On the other hand, if the clause is deemed "broad," this Court must engage in the significant relationship test, under which the Plaintiff's consumer protection claims before this Court are still not subject to arbitration. *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998) (statutory claims not arbitrable unless clause clearly encompasses them).

Here, the Arbitration Provision does not reference the FCRA or statutory violations generally. The provision's vague reference to "any claim or dispute whether in contract, tort, statute or otherwise . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship" does not suffice to encompass Plaintiff's statutory claim, which arises from Exeter's furnishing of the disputed information to the credit reporting agencies.

Nonetheless, assuming *arguendo* that the provision is broad based on the "any claim or dispute" and "arises out of or relates" language, there is no "significant relationship" between the Contract that contains the Arbitration Provision and the claim in this case. The Contract is reasonably understood as relating to the purchase of the vehicle by Plaintiff. Whether Exeter violated federal consumer protection law by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information provided by the consumer reporting agencies, and failing to delete the inaccurate information, does not have any "nexus" to the sales contract for the vehicle.

Moreover, and critically, the Arbitration Provision is silent as to whether the arbitrator is authorized to resolve federal statutory claims. *See* Paladino, 134 F.3d 1054 at 1059 (finding that, for an arbitration clause to "bar litigation of a federal statutory claim," three prongs must be satisfied, one of which is that "the agreement must authorize the arbitrator to resolve federal statutory claims--it is not enough that the arbitrator can resolve contract claims, even if factual issues arising from those claims overlap with the statutory claim issues." (emphasis added) (citing *Brisentine v. Stone & Webster Engineering Corp*., 117 F.3d 519 (11th Cir.1997))). Without such express authorization, the Arbitration Provision does not encompass the statutory claims currently before the Court.

Accordingly, whether the Arbitration Provision at issue is construed as "narrow" or "broad," Plaintiff's statutory consumer protection claims do not fall within the scope of the contract. For this reason, too, the Court must deny Exeter's Motion to Compel Arbitration.

**C. The Court Must Determine Whether a Valid, Enforceable Arbitration Agreement Exists**

Exeter further argues that any dispute pertaining to arbitrability is to be decided through arbitration based on the contract's delegation provision. Exeter contends that the Eleventh Circuit has enforced similar delegation provisions. However, Exeter ignores the key issue in this case—whether there is a valid, enforceable arbitration agreement between Plaintiff and Exeter.

Even when a delegation provision is present, courts must still determine at the outset whether an agreement exists at all. *Simring v. LVNV Funding, LLC*, 2025 U.S. Dist. LEXIS 52413, at *9 (S.D. Fla. Mar. 21, 2025) (quoting *Scherer v. Hyundai Capital America, Inc*., 2022 U.S. Dist. LEXIS 212562 at * 3 (S.D. Fla. Nov. 22, 2022). Parties cannot delegate disputes over whether an agreement even exists between them. *Id*. Courts must decide any challenges to the existence of the

contract or to the validity of the arbitration clause standing alone before compelling arbitration. *Id*. (quoting *Reiterman v. Abid*, 26 F. 4th 1226, 1231 (11th Cir. 2022)).

In *Simring*, the plaintiff opened a credit card through Credit One and agreed to an arbitration provision as part of the application. *Id*. at *2. The account was subsequently charged off and assigned to several parties, with the final assignment to LVNV Funding. *Id*. at *4. The plaintiff disputed whether he and LVNV had an agreement to arbitrate based on the assignments. The Court held that this was a question for the Court to decide. *Id*. at *10.

Under *Simring* and the binding authority it relies upon, Exeter's contention that the Arbitration Provision evinces the parties' intent to arbitrate all gateway issues is without merit. As in *Simring*, Plaintiff here disputes the existence of any valid, enforceable arbitration agreement between Plaintiff and Exeter in light of the account being sold and assigned to NCB. The existence of a valid, enforceable arbitration agreement is a question that the Court must decide. Therefore, the Court must deny Exeter's Motion to Compel Arbitration to the extent it seeks to delegate that determination to an arbitrator.

## **CONCLUSION**

Based on the above, Plaintiff respectfully requests the Court deny Defendant Exeter's Motion to Compel Arbitration and to Dismiss Case as to Exeter, and for such other relief this Court deems proper.

[REMAINDER OF PAGE BLANK]

DATED: April 9, 2026

Respectfully Submitted,

/s/ Talal Rashid .

**TALAL RASHID, ESQ.**
Florida Bar No. 1010307
E-mail: Talal@pzlg.legal
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail: Tom@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street 17th Street
Fort Lauderdale, Florida 33301
Phone: 305-332-6201

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 9, 2026, the foregoing was electronically filed with Florida's E-filing Portal which will send a notice of electronic filing to all counsel of record.

/s/ Talal Rashid

**TALAL RASHID, ESQ.**
Florida Bar No. 1010307