**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

JERMAINE MCINTOSH

Plaintiff, Case No.: 0:26-cv-60370-AHS

v.

EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; TRANS UNION, LLC; MIDLAND CREDIT MANAGEMENT INC.; CAPITAL ONE FINANCIAL CORPORATION D/B/A CAPITAL ONE; COMENITY CAPITAL BANK; BANK OF AMERICA NA; AND EXETER FINANCE LLC,

Defendants.

---

**DEFENDANT EXTER'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE AS TO EXETER**

---

Defendant Exeter Finance LLC ("Exeter" or "Defendant"), by and through undersigned counsel, hereby replies in support of its Motion to Compel Arbitration and Dismiss Case as to Exeter ("Motion to Compel Arbitration"). Doc. No. 27.

## I. PLAINTIFF FAILS TO PRESENT ANY GROUNDS WARRANTING DENIAL OF EXETER'S MOTION TO COMPEL ARBITRATION

Plaintiff Jermaine McIntosh ("Plaintiff") advances two primary arguments in opposition to Exeter's Motion to Compel Arbitration, each of which fail: (a) that Exeter purportedly lacks standing to enforce the arbitration provision because it assigned the Contract; and (b) that Plaintiff's claims against Exeter are purportedly not within the scope of the arbitration provision.[1]

[1] Plaintiff also argues that the Court, rather than an arbitrator, must decide whether an agreement to arbitrate exists. However, this argument does not support denial of Exeter's Motion to Compel Arbitration. Rather,

As set forth herein, the arguments and cases cited by Plaintiff are either inapposite to the facts of this case or not good law. An order compelling arbitration and dismissing Exeter from this case is warranted.

**A. Exeter is Entitled to Enforce the Arbitration Provision in the Contract**

As set forth in its Motion to Compel Arbitration, Exeter is entitled to enforce the Arbitration Provision in the Retail Installment Sales Contract ("Contract") because: (a) the Contract contains a survival clause specifically providing that the Arbitration Provision shall survive any termination, payoff, or **transfer**[2] of the Contract; and (b) there is nothing within the Contract to suggest that the Arbitration Provision does not survive termination, payoff, or transfer of the Contract. Mot. at 7.

In his Opposition, Plaintiff first cites cases that stand for the general rule that an assignee stands in the shoes of the assignor. *See e.g., Price v. RLI Ins. Co.,* 914 So.2d 1010 (Fla. 5th DCA 2005) and *Kennamer v. Ford Motor Credit Co., LLC*, 153 So. 3d 752 (Ala. 2014). Both *Price* and *Kennamer* are factually and legally distinguishable and do not involve the issue of the enforceability of a contract or arbitration provision with a survival clause.

*Price* involved an attempt to recover under a surety bond in favor of First Choice Auto Finance by the Prices following the alleged wrongful repossession of their vehicle. *Id.* at 1011. First Choice was the originator of a motor vehicle installment sales contract with the Prices that was subsequently assigned to Florida Finance, who repossessed the vehicle. *Id.* at 1013. Because the repossession was conducted by Florida Finance, and the surety bond was in favor of First

---

it simply states that the Court must determine the threshold issue of the existence of an arbitration agreement, which Exeter does not dispute.

[2] "Transfer" is defined by Black's Law Dictionary to include "Negotiation of an instrument according to the forms of law…[t]he four methods of transfer are by indorsement, by delivery, by *assignment*, and by operation of law." Black's Law Dictionary (12th ed. 2024), Transfer. (emphasis added)

Choice, the Fifth District held that the Prices could not recover under the bond. *Id.* The Prices also sought to hold First Choice liable for breach of the sales contract, which the Fifth District rejected because the contract had been assigned to Florida First. *Id.* at 1014.

*Kennamer* is an Alabama Supreme Court case primarily construing Alabama state law and therefore is inapposite on that basis alone. The subject Contract in this case is to be construed in accordance with Florida state law and Federal law. *See* Ex. A at 1. In *Kennamer*, the purchasers of a vehicle were sued for breach of contract by the finance company that received an assignment of their motor vehicle installment sales contract. *Id.* at 758. The purchasers filed a counterclaim against the finance company and a third-party complaint against the dealership. *Id.* Both the finance company and the dealership separately moved to compel arbitration. *Id.* On appeal, the Alabama Supreme Court held that the finance company could not compel arbitration because it had waived its right to arbitrate by actively participating in the state court litigation prior to moving to compel arbitration. *Id.* at 763. It also held that although the dealership assigned the installment contract to the finance company and therefore could not enforce the arbitration provision contained in the installment contract, it could compel arbitration under a separate arbitration agreement with the purchasers, which it granted. *Id.* at 763-64.

Next, Plaintiff cites to *Novic v. Midland Funding, LLC*, 271 F. Supp. 3d 778 (D. Md. 2017), for the proposition that Exeter cannot enforce the arbitration agreement after the assignment of the Contract notwithstanding the survival provision. Opp. at 6. In *Novic,* the Maryland district court held that Credit One could not enforce an arbitration provision despite the existence of a survival clause against Novic following its assignment of the account to a debt collector, and after the debt collector had previously sued to enforce the contract in Maryland state court. *Id.* However, Plaintiff fails to acknowledge that *Novic* was vacated and remanded by the Fourth Circuit, which held that

the subject arbitration agreement *could be* enforced by the assignor, Credit One, notwithstanding the prior assignment. *See Novic v. Credit One Bank, N.A.*, 757 Fed.Appx. 263, 266-67 (4th Cir. 2019). The Fourth District vacated the district court's decision and remanded with instructions to stay proceedings and compel arbitration. *Id.* Although this Court has discretion to give persuasive value to statements in a vacated opinion, *Friends of Everglades v. South Florida Water Management Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009), the Maryland District Court's decision to deny arbitration to Credit One based upon its assignment of the contract—which is the proposition advanced by Plaintiff—was reversed by the Fourth Circuit. In addition, the district court applied Maryland state law in construing the assignment and held that Credit One waived the right to arbitrate because the assignee had sued in state court to enforce the account, *Novic*, 271 F. Supp. 3d at 783-87, both of which are factors that are inapplicable to the instant case. Thus, the Maryland district court's holding is not good law for the proposition advanced by Plaintiff.

Finally, Plaintiff's Opposition does not address or attempt to distinguish any of the cases cited by Exeter, which are from Courts within the 11th Circuit and address the specific issue of enforceability of an arbitration provision after the contractual relationship between the parties ends. *See Milfort v. Comcast Cable Commc'ns Mgmt. LLC*, 309 F. Supp. 3d 1268, 1272 (S.D. Fla. 2018) (finding that the arbitration provision in a subscriber agreement remained in effect following the termination of a business relationship between the parties); *see also Day v. Persels & Assocs.*, No. 8:10-CV-2463-T-33, 2011 WL 1770300, at *3 (M.D. Fla. May 9, 2011) (finding that the cancelation of services did not revoke the entire agreement where the agreement expressly stated that the "Arbitration Agreement ... paragraph[ ] of this agreement continue to apply after this agreement ends").

Plaintiff also does not address the Supreme Court and Florida District Court cases cited by

Exeter that hold arbitration provisions are to be enforced post-termination unless specifically excluded from arbitration. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 255 (1977) (providing that an arbitration clause survives the termination of the contract unless the agreement to arbitrate is "negated expressly or by clear implication.); *see also Auchter Co. v. Zagloul*, 949 So. 2d 1189, 1195 (Fla. 1st DCA 2007) ("[a]rbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration.") (citations omitted).

Accordingly, this Court should reject Plaintiff's arguments and find that Exeter is entitled to enforce the arbitration provision despite the assignment of the Contract.

### B. PLAINTIFF'S FCRA CLAIMS AGAINST EXETER ARE PLAINLY WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

Plaintiff argues that his FCRA claim against Exeter purportedly does not fall within the scope of the arbitration provision contained in the Contract because "[t]he Contract is reasonably understood as relating to the purchase of the vehicle by Plaintiff…[w]hether Exeter violated [the FCRA] by failing to conduct a reasonable investigation with respect to the disputed information…does not have any "nexus" to the sales contract for the vehicle." Opp. at 9. The Arbitration Provision by its plain language includes statutory disputes arising out of or relating to Plaintiff's Contract. Ex. A at 5. Plaintiff's argument is incredulous because the Contract is a loan agreement that contains the terms governing the account between Plaintiff and Exeter. *See* Ex. A at 5. The reporting of the account created and evidenced by the Contract and the alleged investigation by Exeter into a dispute of that reporting forms the basis for the Plaintiff's FCRA claim. Any argument regarding whether Exeter accurately reported the account or investigated a dispute into the reporting of the account would require at minimum a reference to or construction

of the loan terms contained in the Contract. Thus, the nexus between the Contract and Plaintiff's FCRA claim against Exeter is inescapable. *See Torruellas v. Credit Acceptance Corp.*, Case No. 6:20-cv-895-Orl-37, 2020 WL 13389781 at *3 (M.D. Fla. June 25, 2020) ("As [the FCRA and FDCPA] claims arise from credit reporting and the collection of funds due under the Contract, they fit within the broad scope of the Arbitration Agreement".); *see also Tuttle v. Credit Acceptance Corp.*, Case No: 8:18-cv-2181-T-23, 2018 WL 6621374, at *2 (M.D. Fla. Oct. 31, 2018) (finding the FDCPA claim "pertains to 'any controversy or claim between [Plaintiff] and [Defendant] arising out of or in any way related to'" the retail installment contract for purchase of a vehicle); *Ware v. Citigroup Fin. Prods., Inc.*, No. 1:13-cv-00369, 2014 WL 12859988, at *5 (N.D. Ga. Feb. 10, 2014) (stating that FDCPA and FCRA claims are not exempted from arbitration and citing cases in support). In addition, the plain language of the arbitration provision includes statutory claims, which Plaintiff's FCRA claim against Exeter plainly falls within.

Finally, the arbitration provision includes a delegation provision, that includes the "interpretation and scope of this Arbitration Clause, and the arbitrability of the claim and dispute." Ex. A at 5. Thus, the determination as to whether Plaintiff's FCRA claim against Exeter falls within the arbitration provision is to be determined by the arbitrator. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). (When "an arbitration agreement contains a delegation provision ... the courts only retain jurisdiction to review a challenge to that specific provision.")

Accordingly, this Court should reject as without merit Plaintiff's argument that the scope of the arbitration provision does not include Plaintiff's FCRA claim against Exeter.

### C. EXETER DOES NOT DISPUTE THAT THE COURT IS TO DETERMINE THE THRESHOLD QUESTION OF WHETHER AN AGREEMENT TO ARBITRATE EXISTS

For his final argument, Plaintiff argues that the court, rather than an arbitrator, is to

determine at the outset whether an agreement to arbitrate exists. Opp. at 10-11. Exeter does not dispute that the Court is to resolve at the outset the threshold question of whether an agreement to arbitrate exists in light of the Plaintiff's challenge to same. *See Simring v. LVNV Funding, LLC*, Case No. 1:24-cv-20803, 2025 WL 876935, at *4 (S.D. Fla., Mar. 21, 2025) (collecting cases). For the reasons set forth in its Motion to Compel and herein *supra*, Exeter is entitled to enforce the arbitration agreement in the Contract.

**WHEREFORE,** Defendant Exeter Finance LLC respectfully requests this Honorable Court grant its Motion to Compel Arbitration, and for such other and further relief as is just and proper for the reasons set forth above.

Respectfully submitted,

*/s/Jonathan Blackmore*

Jonathan L. Blackmore
Florida Bar No. 67902
POLSINELLI PC
315 S. Biscayne Blvd., Suite 400
Miami, FL 33131
Tel: (305) 921-1810
jblackmore@polsinelli.com
FLdocketing@polsinelli.com
krusselburg@polsinelli.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 16, 2026, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/Jonathan Blackmore*
Jonathan L. Blackmore
Florida Bar No. 67902